# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MARY ROMERO, as Next Friend of**
**JOSHUA A. ROMERO**,

      Plaintiff,

vs.                                                              No. 08-cv-1055 MCA/LFG

**CHERYL BRADFORD,**

      Defendant,

**BOARD OF EDUCATION OF THE**
**ALBUQUERQUE PUBLIC SCHOOLS,**

      Intervenor.


## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** comes before the Court on prospective intervenor Albuquerque Public School's *APS' Motion to Intervene* [Doc. 20], filed February 20, 2009. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion.

## I. BACKGROUND

      The following facts are taken from Plaintiff Joshua Romero's *Amended Complaint for the Recovery of Damages Caused by the Deprivation of Civil Rights* [Doc. 17]. They also are taken from *APS' Complaint, in Intervention, for Declaratory Relief* [Doc. 24; Exh. A] and, as such are accepted as true for purposes of resolving the instant motion. See Stadin v.

Union Elec. Co., 309 F.2d 912, 917 (8th Cir. 1962) (allegations in motion to intervene and proposed complaint in intervention are accepted as true).

At all relevant times, Plaintiff Joshua Romero ("Joshua") was a special-education student in the APS system.  In 1998, when Joshua was 10 years old, a psychological test revealed an IQ of 65.  In 2005, APS began to transition Joshua from the school setting to a work setting and, in 2006, Joshua entered the Adult Connections to Community Education Support Services Program ("ACCESS"). [Doc. 17 at 2].

Defendant Cheryl Bradford was at all relevant times an employee of APS and was assigned to be Joshua's community support liaison as he transitioned from school to work. It is undisputed that, at all material times, Joshua was Ms. Bradford's student. [Doc. 17 at 3; Doc. 21 at 3].  Ms. Bradford's duties included (1) reviewing Joshua's psychological evaluations and his Individualized Education Plan ("I.E.P.") and implementing the recommendations of the I.E.P.; (2) helping Joshua transition from the school setting to the community setting; and (3) assisting in finding Joshua housing and employment. [Doc. 17 at 3; Doc. 21 at 3].

Joshua alleges that Ms. Bradford found an apartment for him and that, once she did, began visiting him regularly.  He also alleges that Ms. Bradford initiated a sexual relationship with him and, in 2007, "would at times encourage sexual relations with Joshua and at other times . . . would put a stop to the relationship ." [Doc. 17 at 3].  According to Joshua, this manipulation of his emotions interfered with his educational program. [Id.].

2

Joshua contends that when he told Ms. Bradford that he was going to tell APS and his family about their relationship, she responded that, if he did, he would not be believed and he also would no longer receive education through the ACCESS program.  In December of 2007, Ms. Bradford went to Joshua's apartment to give him a gift.  At that time, Joshua made an audio recording of the encounter, which he maintains demonstrates that the two had an ongoing sexual relationship.  [Doc. 17 at 4].

Ms. Bradford thereafter informed her supervisor that Joshua had become infatuated with her.  She also sought a restraining order against him.  Joshua alleges that because of Ms. Bradford's actions, he (1) has left the ACCESS program; (2) is no longer employed and "has regressed" to living with his mother; and (3) has suffered psychological injuries and severe emotional distress.  [Doc. 17 at 4].

On October 7, 2008, Joshua filed his *Complaint for the Recovery of Damages Caused by the Deprivation of Civil Rights* in the Second Judicial District Court, County of Bernalillo, State of New Mexico, against Ms. Bradford.  In his *Complaint*, Joshua alleged that Ms. Bradford, whom he sued in her individual capacity, "was acting within the scope of her employment [with APS] under the color of state law at all material times."  [Doc. 1; Exh. A at 2; see also Doc. 24; Exh. A at 2].  He also alleged that "[a]s an employee of APS, [Ms.] Bradford owed Joshua . . . a duty to abide and enforce APS policies regarding the special education and the ACCESS programs."  [Id.; Exh. A at 5].  Through his *Complaint*, Joshua asserted claims for deprivation of (1) his right to substantive due process, in violation of the Fourteenth Amendment (Count I); (2) his right to equal protection of the laws, in violation

of the Fourteenth Amendment (Count II); and (3) his First Amendment rights (Count III). [Id.; Exh. A at 4-6].

Because each Count alleged a violation of Joshua's rights under the United States Constitution, Ms. Bradford removed the action to this Court pursuant to 29 U.S.C. § 1441(b). [See generally Doc. 1].  On February 10, 2009, Joshua filed his *Amended Complaint for the Recovery of Damages Caused by the Deprivation of Civil Rights* [Doc. 17], naming his sister, Mary Romero, as "Next Friend of Joshua Romero," as it is undisputed that Joshua lacks capacity to sue. [See id.; see also Doc. 14; and Fed.R.Civ.P. 17].

On February 20, 2009, APS filed the motion to intervene that is the focus of this *Memorandum Opinion and Order*.  It is APS's position that if, as Joshua alleges, Ms. Bradford ultimately is found to have been acting within the scope of her duty as a school employee, APS, pursuant to the New Mexico Tort Claims Act, will be required to defend and indemnify Ms. Bradford from any settlement or judgment.  Because APS would be liable for any judgment against Ms. Bradford, APS seeks to participate in the action to represent and defend itself. [Doc. 20 at 2].  Notwithstanding, APS denies that the alleged acts of Ms. Bradford were within the scope of her duty as a school employee, and seeks a declaration that it does not owe a duty to defend or indemnify her.  If any such acts are proven and are deemed to come within the scope of Ms. Bradford's duties, asserts APS, APS is entitled to recover from Ms. Bradford for the costs of defense and any settlement or judgment. [Doc. 24; Exh. A at 2-3].

APS contends that is has the right to intervene under Fed.R.Civ.P. 24(a) because: (1) its motion is timely; (2) it has sufficient interests in the matter; (3) those interests will be impaired if intervention is denied; and (4) its interests are not adequately represented by Ms. Bradford. [Doc. 20 at 1].  Alternatively, APS submits that permissive intervention under Fed.R.Civ.P. 24(b) is appropriate under the circumstances because: (1) the interests of APS depend on questions of fact that are congruent with questions of fact in the main action; and (2) intervention will not prejudice the original parties.  [Id.].  Joshua opposes intervention on grounds that APS's motion is untimely and also that intervention would be inefficient and is unnecessary to protect the quasi-insurer position that APS asserts. [See generally Doc. 22].

## II. ANALYSIS

### A.      Intervention: Fed.R.Civ.P. 24

#### 1.      Intervention as of Right

"Intervention," when that term is used in the legal sense, describes a proceeding into which a person not originally a party to a lawsuit already in progress enters, so that he or she may protect some right or interest likely to be affected by the proceeding.  See BARRON'S LAW DICTIONARY, 243 (2nd ed. 1984).  There are two types of intervention: (1) as of right, and (2) permissive.

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention of right and provides that:

> [o]n timely motion, the court *must* permit anyone to intervene who:
>
> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed.R.Civ.P. 24(a) (emphasis added).  Accordingly, in addition to filing a timely motion, a prospective intervenor, absent an unconditional statutory right to intervene, must demonstrate: (1) an interest; (2) impairment or impediment; and (3) inadequate representation by the existing parties to the action.  See id.  Because "an unconditional right to intervene by a federal statute[,]" see id., does not appear to be a concern in this case, the Court focuses its analysis and discussion on subsection (2) of Rule 24(a).

In the words of the Tenth Circuit, "courts of appeals have struggled to reach a definitive interpretation of Rule 24(a)(2)[, and i]n particular, the notion of 'interest' has proved murky." San Juan County, Utah v. United States, 503 F.3d 1163, 1192 (10th Cir. 2007).  Whether a prospective intervenor has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination, with "the 'interest' test [being] primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process[.]"  Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Dep't of Interior, 100 F.3d 837, 841 (10th Cir. 1996) (*quoting* Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967)).

While a "direct, substantial, and legally protectable" interest will clearly satisfy the "interest" requirement of Rule 24(a)(2), "other interests may also suffice." San Juan County, 503 F.3d at 1195. Indeed, in assessing "interest" under Rule 24(a)(2), courts are not to act mechanically but, instead, are to make a practical, threshold inquiry while "exercis[ing] judgment based on the specific circumstances of the case." Id., at 1199. The Advisory Committee Notes put it this way: "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene. . . ." Fed.R.Civ.P. 24, advisory committee notes (1966 Amendment).

In addition to the "interest" requirement, a prospective intervenor must also demonstrate the "impairment" and "inadequate representation" requirements to justify intervention. The prospective intervenor need not demonstrate impairment or impediment "of a strictly legal nature[,]" and this Court "may consider any significant legal effect in the applicant's interest." Coalition of Arizona/New Mexico Counties, 100 F.3d at 844. As for the third requirement, it should be noted that, although the prospective intervenor "bears the burden of showing inadequate representation, that burden is the 'minimal' one of showing that representation 'may' be inadequate." Utah Ass'n of Counties v. Clinton, 255 F.3d 1246, 1254 (10th Cir. 2001) (internal quotations omitted). The prospective intervenor "may fulfill this burden by showing collusion between the representative and an opposing party, that the representative has an interest adverse to the applicant, or that the representative failed in fulfilling his duty to represent the applicant's interest." Sanguine, Ltd. v. United States Dep't of Interior, 736 F.2d 1416, 1419 (10th Cir. 1984).

7

With respect to the requirement that the movant demonstrate "inadequate representation," treatise authors have commented that

> [t]he most important factor in determining adequacy of representation is how the interest of the absentee compares with the interests of the present parties. If the interest of the absentee is not represented at all, or if all existing parties are adverse to the absentee, then there is no adequate representation. On the other hand, if the absentee's interest is identical to that of one of the present parties, or if there is a party charged by law with representing the absentee's interest, then a compelling showing should be required to demonstrate why this representation is not adequate.

7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1909 (2d. ed. 1987).

As a final matter, it bears noting that while each of the three Rule 24(a)(2) requirements is independent of the others and all three must be satisfied as a prerequisite to intervention,

> practical application of Rule 24(a)(2) involves a balancing and blending of the independent components. The three criteria are not analyzed in a vacuum and, instead, are often applied as a group.
>
> The criteria should be considered together rather than discretely. Intervention should be granted of right if the interests favoring intervention outweigh those opposed. For example, a lesser showing of impairment may be required by the court if the movant's interest is very strong. Likewise, intervention of right may be granted if the movant's claimed interest may be significantly impaired by the action, even if some uncertainty exists regarding the sufficiency of that interest. The inquiry under Rule 24(a)(2) must focus on the particular facts and procedural posture of each motion.

6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 24.03[1][b] (Matthew Bender 3d ed.).   In short, "the determination of a party's right to intervene [of right] is, at least in part, a process of equitable balancing."  San Juan County, 503 F.3d at 1195.

**2.     Permissive Intervention**

As stated above, intervention may also be permissive in nature.  Rule 24(b) of the Federal Rules of Civil Procedure governs permissive intervention and provides that "[o]n timely motion, the court *may* permit anyone to intervene who . . . is given a conditional right to intervene by a federal statute; or has a claim or defense that shares with the main action a common question of law or fact."  Fed.R.Civ.P. 24(b) (emphasis added).   "[P]ermissive intervention is a matter within the sound discretion of the district court, and [an appellate court] will not disturb [a district court's] order except upon a 'showing of clear abuse.'"  United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1427 (10th Cir. 1990) (*quoting* Shump v. Balka, 574 F.2d 1341, 1345 (10th Cir.1978)).  Still, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.  Fed.R.Civ.P. 24(b); see also  DeJulius v. New England Health Care Employees Pension Fund, 429 F.3d 935, 943 (10th Cir. 2005).

Turning now to the facts of this case, the Court first determines that APS's motion to intervene was timely filed.  "The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'"  Utah Ass'n of Counties, 255 F.3d at 1250 (*quoting* Sanguine, Ltd.,

9

736 F.2d at 1418)).  In this case, APS filed its motion within ten days of Joshua's filing of his *Amended Complaint*, and within three months of the removal of the original state-court action to this Court. [See Docs. 1, 17, and 20; see also Doc. 32 in P.A. Smith Concepts & Designs, Inc., et al. v. Frederic R. Bradshaw, 05cv136 JH/ACT (finding that motion to intervene was timely when it was filed four months after lawsuit was filed)].  APS filed its motion three weeks after Joshua's January 30, 2009 deadline to join additional parties had passed, and less than two weeks before Ms. Bradford's own additional-parties deadline had run.  It does not, therefore, appear that APS unduly delayed its request to intervene.

Further, this matter, which was removed to this Court only about three months before APS filed its motion, is still a relatively young case.  For example, the termination date for discovery is May 18, 2009; discovery-related motions are due by June 8, 2009; dispositive motions are due by June 18, 2009; a pretrial conference is scheduled for November 10, 2009; and a jury trial is set to begin December 14, 2009. [See Docs. 8 and 13].  As of the filing of APS's motion to intervene, only one deposition had been taken (that of Ms. Bradford), and written discovery was in its initial stages. [See Doc. 20 at 3].  Moreover, APS represents that it "does not intend to request extensions for deadlines already set. . . ." [Doc. 20 at 3].

Given that this case is in the preliminary stages, the Court is not persuaded that APS's intervention will prejudice the existing parties to this action.  See Diaz v. Southern Drilling Corp., 427 F.2d 1118, 1126 (5th Cir. 1970) (district court did not abuse discretion in allowing intervention of right where, among other things, "few legally significant events ha[d] occurred in the separate part of the case in which the [opponent of intervention was]

involved."); cf. Orange County v. Air California, 799 F.2d 535, (9th Cir. 1986), cert. denied, 480 U.S. 946 (1987) (district court did not abuse discretion in denying motion to intervene where motion was made "only after a proposed, and as it turned out, final settlement had been reached by all the parties after five long years of litigation.").  For these reasons, the Court concludes that APS's motion to intervene is timely.

The Court also concludes that APS has satisfied the "interest" and "impairment" requirements of Rule 24(a).  Joshua does not dispute that the New Mexico Tort Claims Act obligates APS to defend Ms. Bradford and indemnify her should Joshua prevail on the merits of the underlying action. [See Doc. 22 at 1].  To be sure, § 41-4-4 of the Act provides, in pertinent part, that "[u]nless an insurance carrier provides a defense, a governmental entity shall provide a defense, including costs and attorney fees, for any public employee when liability is sought for . . . any tort alleged to have been committed by the public employee while acting within the scope of his duty. . . ."  N.M.S.A. 1978, § 41-4-4(B)(1). Additionally, "[a] governmental entity shall pay any settlement or any final judgment entered against a public employee for . . . any tort that was committed by the public employee while acting within the scope of his duty. . . ." N.M.S.A. 1978, § 41-4-4(D)(1).  The New Mexico Court of Appeals has described the combination of these two subsections of the Act "as a kind of statutory insurance policy." Risk Mgmt. Div., Dept. of Fin. and Admin., State v. McBrayer, 14 P.3d 43, 45-46 (N.M.App. 2000).  However, Joshua maintains that "this position as an insurer does not give APS a claim against [him] or a defense against [his] allegations." [Doc. 22 at 2].

11

Similar facts were presented in <u>Soto v. Galvan</u>, 06cv738 WFD/LFG, where the State of New Mexico's Risk Management Division of the General Services Administration ("Risk Management") moved to intervene in a 42 U.S.C. § 1983 action brought against a state magistrate court judge by a woman who contended that he had violated her civil and statutorily protected rights, and had done so while acting under color of state law. [<u>See</u> Doc. 38 in 06cv738 WFD/LFG at 1].  As does APS in this case, Risk Management in <u>Soto</u> sought to intervene to obtain a declaration as to its obligation to defend and indemnify the defendant, explaining that it had no such duty because the acts alleged were not within the scope of the defendant's duties. [<u>Id.</u> at 2].  Citing to § 41-4-4(B) of the New Mexico Tort Claims Act and Risk Management's obligation to defend and indemnify, Chief Magistrate Judge Lorenzo Garcia concluded that "it [was] clear that Risk Management, which ha[d] a statutory obligation in this area, [did], indeed have an interest [that was] affected by the subject action." [<u>Id.</u> at 3].  Judge Garcia also noted that, until Risk Management's declaratory-judgment action was resolved, Risk Management was obligated to defend the defendant. [<u>Id.</u>].  Having "conclude[d] that Risk Management ha[d] satisfied the prerequisites of Rule 24(a)(2) for intervention as a matter of right[,]" Judge Garcia granted Risk Management's motion to intervene as of right. [<u>Id.</u> at 4, 5].

APS here being in a position similar to that occupied by Risk Management in <u>Soto</u>, this Court finds Judge Garcia's reasoning as to the "interest" and "impairment" requirements persuasive, and applicable here.  The Court accordingly concludes that APS has satisfied those two requirements.

The Court also concludes that APS has borne the "minimal" burden of demonstrating that its interests currently are not adequately represented.  See Utah Ass'n of Counties, 255 F.3d at 1254.  APS contends—and Joshua does not appear to dispute—that "a factual dispute lies at the heart of APS' motion: whether [Ms.] Bradford was acting in the scope of her duty." [Doc. 24 at 2].  Accepting as true APS's allegations,[1] in each of the three depositions taken by Joshua's attorneys as of the time the motion to intervene was filed,

> counsel devoted a significant portion of the deposition to the issue of whether [Ms.] Bradford was acting within the scope of her duties. [Joshua's] counsel asked a series of questions about whether an APS employee in [Ms.] Bradford's employment position would be expected to drive a student in her car, go to a student's apartment, communicate with a student on the employee's cell phone, counsel the student on personal matters, the scope of services required by [Joshua's I.E.P.], the job description for [Ms.] Bradford's employment position, the hours of Ms. Bradford's duty day, and similar questions. None of these questions are relevant to [Joshua's] claim that [Ms.] Bradford had a sexual relationship with Joshua Romero. All of these questions relate to the issue of whether [Ms.] Bradford was acting within her scope of duty.

[Id. at 3].  APS asserts that, absent intervention, there is no party to the litigation with an interest in developing a complete factual record on the issue of whether Ms. Bradford was acting within the scope of her duties which, in turn, "risk[s] . . . a skewed factual record or a collusive settlement agreement that may later APS' ability to litigate the issue. . . ." [Doc. 20 at 5-6].  Moreover, maintains APS, "[b]oth [Joshua] and [Ms.] Bradford have a financial interest in structuring the case such that [Ms.] Bradford is deemed to be acting in the scope

---

[1]  See Stadin, 309 F.2d at 917.

of her duties." [Id. at 5].

It has been noted that

> [c]ollusion between the party purporting to represent the position of an applicant for intervention of right and those on the other side of the suit will necessarily destroy the adequacy of representation as contemplated by FRCP 24(a)(2), inasmuch as the existing party will have little if any incentive to present a vigorous case.

25 FED. PROC., L. ED. § 59:342.  Because Ms. Bradford does not represent APS's interest and, in fact, is adverse to APS, there currently is no adequate representation for APS.  See WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1909, supra, at 8-9.  For this reason, the Court concludes that APS has satisfied the third requirement of Rule 24(a)(2) necessary to justify intervention of right.

Even if the Court were to determine that APS is not entitled to intervene as of right, it would nonetheless conclude that permissive intervention is appropriate. Because the Court has already determined that intervention is unlikely to prejudice the existing parties to the litigation, it turns now to the second requirement of Rule 24(b), *to wit*, that APS possesses "a claim or defense that shares with the main action a common question of law or fact." Fed.R.Civ.P. 24(b).

Clearly, APS's *Complaint in Intervention* shares with Joshua's *Amended Complaint* "a common question of law or fact."  In his *Amended Complaint*, Joshua alleges that Ms. Bradford was an APS employee who "was acting within the scope of her employment under the color of state law at all material times." [Doc. 17 at 2].  By contrast, APS asserts that

14

"[t]he acts that [Joshua] alleges were committed by [Ms.] Bradford, if true, are actions that are not within the scope of Ms. Bradford's duty as an APS employee." [Doc. 24; Exh. A at 2]. If Ms. Bradford did commit the acts alleged and did so while acting within the scope of her duties, APS is required to defend and indemnify her pursuant to § 41-4-4 of the New Mexico Tort Claims Act. Thus, the question of the capacity in which Ms. Bradford was acting when she allegedly engaged in the conduct at issue is at the heart of both Joshua's Amended Complaint and APS's *Complaint in Intervention*. Accordingly, permissive intervention is appropriate here.

## III. CONCLUSION

On the basis of the foregoing, the Court concludes that APS has demonstrated its entitlement to intervene as of right in this matter. In the alternative, APS also has shown that permissive intervention is appropriate under the circumstances. Therefore, APS motion to intervene will be granted.

**IT IS, THEREFORE, ORDERED** that *APS' Motion to Intervene* [Doc. 20] is **GRANTED**.

**SO ORDERED** this 13th day of April, 2009, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge

15