IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSHUA ROMERO,
next friend of Mary Romero,

        Plaintiff,

 vs.                                     CIVIL NO.  08-1055 MCA/LFG

CHERYL BRADFORD,

        Defendant.

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,

        Intervenor.

**ORDER GRANTING MOTION FOR RULE 35 EXAMINATION,
DENYING REQUEST THAT IT BE RECORDED,
AND GRANTING LIMITED EXTENSION OF EXPERT DISCOVERY**

THIS MATTER is before the Court on Defendant Cheryl Bradford's ("Bradford") Motion to Compel Mental Examination and Extension of Expert-Disclosure Deadline [Doc. 28].  The Court considered the motion, response and reply.  The Notice of Completion of Briefing was filed on April 28, 2009.  Oral argument is not necessary.

Plaintiff Mary Romero ("Romero") is the sister and next friend of Joshua Romero ("Joshua").  She brings this action on his behalf, alleging violations of Joshua's Fourteenth Amendment due process rights, his equal-protection rights, and his First Amendment rights.

**Background**

Joshua was a special education student with the Albuquerque Public School System ("APS"), and Bradford was employed by APS as Joshua's special education counselor.  Romero contends that Bradford was responsible for assisting Joshua in a transition from a school setting into a work setting

as part of the Adult Connections to Community Education and Support Services Program ("ACCESS"). Romero further contends that Bradford's duties included helping Joshua with housing, employment and mental health issues; and that:

> [S]he manipulated his emotional state to gratify her own sexual desires. She used her position of authority to prevent Joshua from reporting the abuse and told him he would be thrown out of the ACCESS program if he complained. Defendant Bradford told Joshua no one would believe him if he told Bradford's supervisors of the sexual relationship.

[Doc. 8, Joint Status Report, p. 3.]

Romero alleges that Bradford initiated a sexual relationship with Joshua, and as a result of Bradford's actions, "Joshua has suffered psychological injuries and severe emotional distress." [Doc. 17, Amended Complaint, ¶ 34.] Romero further asserts that Bradford used her position of authority, "to sexually and psychologically abuse Joshua Romero"[Id., ¶ 37], and that she exposed him to "sexual and psychological abuse." [Id., ¶ 39.] Romero claims that Bradford's acts, "proximately caused Joshua Romero's injuries, including invasion of bodily integrity and severe psychological and emotional distress." [Id., ¶ 57.]

In the parties' Joint Status Report, Romero identifies various witnesses who will testify as to Joshua's "damages and trauma." [Doc. 8, p. 4.]

## Present Motion

Bradford seeks to conduct a Fed. R. Civ. P. 35 evaluation of Joshua. Bradford's expert is Elizabeth Dinsmore, PhD. Romero declines to make Joshua available for this evaluation unless all of Dr. Dinsmore's contacts with Joshua are recorded.

2

**Analysis**

**I.     Discovery Standard**

The starting point for discovery disputes is Fed. R. Civ. P. 26(b)(1).  This rule generally provides for broad discovery.  A party may obtain discovery regarding "any nonprivileged matter that is relevant to the claim or defense of any party."  Relevant discovery is defined as information that "appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  The broad discovery principle underlying this rule is intended to allow the parties to learn as much as they can about each other's claims or defenses prior to trial so as to better evaluate a case for settlement or, alternatively, to be prepared to meet the proofs at the time of trial.  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34-35, *cert. denied*, 467 U.S. 1230 (1984).  *See* Smith v. Ford Motor Co., 626 F.2d 784 (10th Cir. 1980), *cert. denied,* 450 U.S. 918 (1981) (discussing discovery in terms of expert witness disclosures).

Liberal construction is given under the rules to avoid "trial by ambush," Smith, 626 F.2d at 797.  Thus, when a plaintiff seeks substantial damages for a condition, including physical, mental or emotional injury, and places that condition "at issue," an opposing party may seek discovery on the condition and its causes, as those are relevant to the party's claim or to the defendant's defenses. *See* Fed. R. Civ. P. 26(b).

Rule 26 also vests the Court with broad discretion to tailor discovery as needed.  Crawford-El v. Britton, 523 U.S. 574, 598-99 (1998).  The rules provide federal courts with ample discretion to restrict discovery where the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2)(C); Salmeron v. Highlands Ford Sales, Inc., 220 F.R.D. 667, 670 (D.N.M. 2003).  In balancing the need for information against the burden or risk of harm, the Court considers the "needs of the case, the amount in controversy, the parties' resources, the importance

of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

**B.     Request for Rule 35 IME**

Rule 35 provides authority for a court to order a party "whose mental or physical condition . . . is in controversy to submit to . . . a mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a). In order to justify the need for a Rule 35 independent medical examination ("IME"), a party must have placed his or her mental status in controversy and there must be a showing of good cause for the order. Herrera v. Lufkin Industries, Inc., 474 F.3d 675, 689 (10th Cir. 2007). The requirement of good cause is not a formality; instead, the Court must genuinely balance the need for the information with the right to privacy and safety of the party. Schlagenhauf v. Holder, 379 U.S. 104, 118 (1964).

When the request for a Rule 35 evaluation is contested, it is addressed to the sound discretion of the trial court. O'Sullivan v. Rivera, 229 F.R.D. 184, 186 (D.N.M. 2004). However, here, Romero does not challenge Bradford's request to conduct a mental examination of Joshua by an expert of Bradford's choosing. [Doc. 31, p. 3.] Instead, she seeks only to have a portion of the examination, specifically the interview involving patient history, to be recorded. Nonetheless, Romero "conditions the examination to be performed by Dr. Dinsmore on [the doctor's] agreement to record the interview or patient history portion of her examination of Joshua Romero." [Doc. 31, p. 4.] In a sense then, Romero contests the Rule 35 IME, unless restrictions are imposed. Thus, the Court proceeds to the analysis of whether Romero has placed Joshua's mental status in controversy and whether good cause for the examination was demonstrated.

A party's own pleading may put his or her mental condition "in controversy." *See* Schlagenhauf , 379 U.S. at 117-19. For example, when the plaintiff has asserted a specific cause

4

of action for intentional infliction of emotional distress, or alleged a specific mental injury or disorder, or when plaintiff claims an unusual or more severe emotional distress, or where the plaintiff offers expert testimony in support of the claim, the plaintiff's emotional condition is at issue. LeFave v. Symbios, Inc., 2000 WL 1644154 at *4 (D. Colo. 2000). *See also* Fox v. Gates, 179 F.R.D. 303, 307-08 (D. Colo. 1998) (discussing factors that must be present to justify Rule 35 IME). Rule 35 is "to be accorded a broad and liberal treatment, to effectuate [the civil procedure rules'] purpose that civil trials in the federal courts no longer need be carried on in the dark." Herrera, 474 F.3d at 690 (*citing* Schlagenhauf, 379 U.S. at 114-15).

In contrast, if a party makes a "garden variety" emotional distress claim which amounts to no more than an attempt to recover for generalized insult, hurt feelings and lingering resentment, courts have concluded that the party did not place his or her mental status in controversy. Thiessen v. General Elec. Capital Corp., 178 F.R.D. 568, 569-70 (D. Kan. 1998). "Garden variety" means ordinary and commonplace. Webster's New World Dictionary, 65 (3d College Ed. 1988).

> Garden variety emotional distress is that which [is] simple or usual. In contrast, emotional distress that is not garden-variety may be complex, such as that resulting in a specific psychiatric disorder, or may be unusual, such as to disable one from working.

Ruhlmann v. Ulster County Dept. of Soc. Servs., 194 F.R.D. 445, 449 n. 6 (N.D.N.Y. 2000); Jessamy v. Ehren, 153 F. Supp. 2d 398, 401 (S.D.N.Y. 2001).

In this case, Romero seeks substantial damages for claimed constitutional violations and for the "psychological injuries and severe emotional distress." Romero contends that the injury was so severe that Joshua was forced to withdraw from the special education class and ACCESS program; and, as a result of the alleged constitutional violations, "Joshua is no longer employed and has

regressed to living with his mother." [Doc. 17, ¶ 33.] Thus, it is clear that the damages sought in this case do not fall within the category of "garden variety" and that Romero's mental condition is "in controversy." Moreover, the Court concludes that Bradford made the required "affirmative showing that . . . [the] condition as to which the examination is sought is really and genuinely in controversy . . . ." Hodges v. Keane, 145 F.R.D. 332, 334 (S.D.N.Y. 1993) (internal citations omitted).

In addition, even after considering Joshua's privacy rights and safety, the Court concludes there is good cause to order the examination. A party may not assert a right to damages and then deny the opposing party an opportunity to challenge the legitimacy of the claim. Bradford is entitled to ascertain the condition and its causes. Although Romero attributes Joshua's condition to the alleged constitutional violations, Bradford is not required to accept Romero's characterization, and may independently determine the existence of, and the cause of, whatever condition Joshua has. Therefore, the Court determines there is good cause to order the Rule 35 IME.

### C. Recording of IME and Contacts with Examiner

Romero seeks to impose restrictions or limitations on the Rule 35 examination. Specifically, she wishes to record all contacts between Joshua and Dr. Dinsmore. A request to videotape an IME or to allow attendance by a third-party raises a single inquiry. Hertenstein v. Kimberly Home Health Care, Inc., 189 F.R.D. 620, 628 (D. Kan. 1999) (*citing, inter alia,* Holland v. United States, 182 F.R.D. 493, 495 (D.S.C.1998) (considering the presence of "a professional videographer or court reporter, or even ... an attended videotape machine" as simply variations of the same condition, i.e. the presence of a "third party") and Barrett v. Great Hawaiian Cruises, Inc., No. 96-00257 DAE, 1997 WL 862762, at *1-2 (D. Haw. Sept. 17, 1997) (considering the presence of plaintiff's attorney, some other "lay" observer, or a tape recorder as substantially the same condition)).

In <u>Tomlin v. Holecek</u>, 150 F.R.D. 628 (D. Minn. 1993), the plaintiff sought to have a third person present to observe the examination or to record the process. The court concluded that the presence of a third person or recording device might invalidate the results of the examination while destroying the "level playing field" contemplated by the federal rule. In <u>Tomlin</u>, the court expressed concerns that the presence of a third person or recording equipment would inject a degree of the adversarial process into one that was intended to be neutral. <u>Id.</u> at 633-34.

As noted in <u>Warrick v. Brode</u>, 46 F.R.D. 427 (D. Del. 1969), and <u>Brandenberg v. El Al Israel Airlines</u>, 79 F.R.D. 543, 546 (S.D.N.Y. 1978), the presence of a party's attorney at the Rule 35 examination injects a partisan character in what should be a wholly objective inquiry. The same rationale for excluding counsel's presence at a Rule 35 examination holds true for having the examination recorded. The mere presence of recording equipment, or the knowledge that the process is being recorded, may well change the dynamic from an independent examination to that of an adversarial proceeding, and this is not contemplated in the Rule's language.

The <u>Tomlin</u> court's analysis is reflected in other decisions discussed in <u>Discovery Proceedings in Federal Court</u>, § 18.08 (3d Ed.).

> A person appointed under Fed. R. Civ. P. 35(a) to conduct an examination, even if chosen by agreement of the parties, is considered in a sense to be an officer of the court performing a non-adversary duty. [<u>Warrick v. Brode</u>, 46 F.R.D. 427 (D. Del. 1969)]. Consequently, the person being examined is not ordinarily entitled to have counsel present during the examination. [<u>Salvatore v. American Cyanamid Co.</u>, 94 F.R.D. 156 (D.R.I. 1982); <u>McDaniel v. Toledo, Peoria & Western R. Co.</u>, 97 F.R.D. 525 (C.D. Ill. 1983). The reason for this general prohibition is that if the presence of counsel were contemplated, it would have been expressly included in the language of Fed. R. Civ. P. 35 or in other rules.

The authors of <u>Discovery Proceedings in Federal Court</u> agree with the view that plaintiff's counsel is not permitted as a matter of right at a Rule 35 IME, "[b]ecause of concerns that counsel's

presence may invade the province of the physician," Id. at § 18.08.  In addition, the presence of recording equipment could well hinder the examining expert's ability to establish rapport with the examinee and might also inhibit the examinee from communicating candidly during the examination.

Romero's attempt to condition the Rule 35 IME on Bradford's agreement to tape record certain portions of the interview is rejected.  The Court declines to permit any portion of the IME to be recorded.

### D. Bradford's Request for Extension

In Bradford's motion, she asks the Court to extend her expert disclosure deadline until 30 days following the IME of Joshua. [Doc. 28, p. 4.] Romero argues that any extension be limited to Dr. Dinsmore's expert disclosures, rather than to expert disclosures in general. [Doc. 31, p. 5.] Based on Bradford's reply, it appears that she seeks the extension for expert disclosures only in relation to Dr. Dinsmore. [Doc. 33, p. 5.] Thus, the Court will permit a 30-day extension for Defendant to submit the required Rule 26 expert disclosures specific to Dr. Dinsmore.

### Conclusion

In sum, the Court finds good cause to proceed with a Rule 35 examination, denies Romero's request that the examination be recorded; and allows Bradford a 30-day extension from entry of this Order to make her Rule 26 expert report in reference to Dr. Dinsmore; and further permits Romero 30 days from Dr. Dinsmore's expert report to take Dr. Dinsmore's deposition.

IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge